IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2018 JAN -3 PM 2: 27

GUIDEONE SPECIALTY MUTUAL
INSURANCE COMPANY, GUIDEONE
LLOYDS INSURANCE COMPANY,
          Plaintiff,

-vs-

FELLOWSHIP AT FOREST CREEK,
          Defendant.

CAUSE NO.:
AU-16-CA-597-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Fellowship at Forest Creek (FFC)'s Motion for Summary Judgment [#27], Plaintiffs GuideOne Specialty Mutual Insurance Company and GuideOne Lloyds Insurance Company (collectively, GuideOne)'s Response [#31] in opposition, FFC's Reply [#34] in support, and GuideOne's Surreply [#35] in opposition, as well as GuideOne's Motion for Summary Judgment [#28], FFC's Response [#30] in opposition, GuideOne's Reply [#33] in support, and FFC's Surreply [#37] in opposition. Having reviewed the documents, the arguments of counsel, the relevant law, and the case file as a whole, the Court now enters the following opinion and order.

**Background**

I.    **Introduction**

This is an insurance coverage dispute between FFC and GuideOne. The property at issue in this dispute (the Property) is owned by FFC and located in Round Rock, Texas. FFC Mot.

1

Summ. J. [#27] at 2. The Property consists of three buildings: the Worship Center, the Children's Building, and the Student Center. *Id.*

The insurance dispute centers on hail and wind damage which occurred to the Property sometime between 2007 and 2012. GuideOne Mot. Summ. J. [#28] at 5–7.[1] As explained below, the parties dispute when the hail damage to the Property occurred: FFC's expert estimates the damage should be traced to a May 2012 hail storm, while GuideOne's expert suggests at least some of the wind and hail damage occurred in 2007 and 2009. *See* FFC Mot. Summ. J. [#27-3] Exhibit C (Kettle Affidavit); GuideOne Mot. Summ. J. [#28-1] Exhibit A (Hoover Declaration) at 4. The date on which the damage occurred is relevant for two reasons.

First, the date on which the damage occurred is relevant in determining which insurance policy covers FFC's claim. Between 1999 and 2017, the Property has been insured under three different insurance policies. GuideOne Lloyds insured the Property from 1999 to 2009 (the Lloyds Policy), while GuideOne Mutual insured the property from 2009 to 2013 (the Mutual Policy). FFC Mot. Summ. J. [#27] at 2. Around 2014, FFC switched insurance carriers, and as a result, the Property is now insured under a different carrier's policy. *See* FFC Mot. Summ. J. [#27-4] Exhibit D at 25–28. Thus, over the last ten years, the Property has been covered at various times by three different insurance policies, only two of which were issued by a GuideOne entity. The parties do not dispute the hail damage occurred while one of the two GuideOne policies was in effect.

Second, the date on which the damage occurred is relevant in determining whether FFC fulfilled its contractual obligation to report its claim in a timely fashion. In general, both the Mutual Policy and the Lloyds Policy appear to contain substantively similar provisions, and in particular, the parties have identified two provisions which appear in both policies and which are

---

[1] All page number references herein refer to the CM/ECF page numbering assigned within the docket.

central to the parties' coverage dispute. The first relevant provision is a "Common Policy Condition" which applies to all parts of the policy and states,

> "It is understood and agreed that knowledge of an occurrence by your agent, or any servant or employee of yours, shall not in itself constitute knowledge by you, unless an executive officer of your corporation shall have received such notice from its agent, servant or employee."

FFC Mot. Summ. J. [#27-2] Exhibit B (Mutual Policy) at 7–8 (Common Policy Condition H). The second relevant provision is a "Loss Condition" which applies "in addition to the "Common Policy Conditions" and which states in relevant part that, in the event of loss or damage to the insured property, FFC must give "prompt notice of the loss or damage." Mutual Policy at 57–58.

## II. Discovery and Investigation of the Damage

Around 2014 or 2015, the hail damage to the Property began to manifest itself in the form of increasingly severe leaking within the Worship Center whenever it rained. The parties dispute when FFC first discovered this leaking, but it appears the first person to take note of the problem was FFC's sole maintenance employee, Jim Whitehead. Whitehead testified in his deposition that the Worship Center had experienced minor leaking on five or six occasions since the Worship Center was built in 2003, but began to experience significant leaking in either 2014 or 2015. GuideOne Mot. Summ. J. [#28-5] Exhibit B (Whitehead Deposition) at 26–27. At first, the leaking from the roof would merely puddle on the floor of the unoccupied second story of the Worship Center.[2] *Id.* at 26. However, as the leaking got worse, Whitehead began to notice water seeping through the ceiling and pooling on the first floor of the Worship Center.[3] *Id.*

---

[2] Because the second floor of the Worship Center is not used by FFC, Whitehead appears to have been the only person to have observed this leaking. *See* Whitehead Depo at 12–13, 26; GuideOne Mot. Summ. J. [#28-6] Exhibit C (Kettle Deposition) at 5 (commenting "nobody goes [o]nto" the second floor of Worship Center because it is not in use).

[3] Additionally, Whitehead testified that every six months, he would venture onto the roof of the Worship Center to "look around" and change the filters on the air conditioner. Whitehead Deposition at 11–12, 21–22. During these jaunts on the Worship Center roof, Whitehead noticed hail markings on the vent fins of the building's

3

Whitehead did not inform the leadership that the Worship Center roof was leaking until August or September 2015. GuideOne Mot. Summ. J. [#28-6] Exhibit C (Kettle Deposition) at 6–7. Brent Kettle, the Vice-Chair of the Board of Elders for FFC, testified FFC leadership was unaware the Worship Center roof was leaking prior to this time. Kettle Deposition at 11.[4] Kettle and Smith also testified they were unaware of any hail storms occurring at the Property. *See, e.g.*, Smith Deposition at 6; Kettle Deposition at 13–14.[5]

In an attempt to diagnose the problem, FFC recruited a parishioner who worked in roofing to inspect the Worship Center roof and determine the cause of the leaking. It was at this point that FFC's leadership claims to have first learned of the hail damage to the Property's roofs. On September 15, 2015, FFC hired a public adjuster, Logan Rodgers, to assist in making an insurance claim. GuideOne Mot. Summ. J. [#28-9] Exhibit 15.[6] In turn, Rodgers hired Matt Phelps, an engineer, to inspect the property and help determine the date on which the storm damage occurred. Kettle Affidavit. Rodgers and Phelps eventually informed FFC the storm damage had occurred on May 7, 2012, and May 11, 2012, while the property was covered by the Mutual Policy. *Id.* With this information in hand, Rodgers reported the claim to GuideOne on

---

HVAC unit. Whitehead Deposition at 21. There is no evidence in the record Whitehead ever told FFC leadership of these hail markings.

[4] Donnie Smith, the Pastor at FFC, gave contradictory testimony during his deposition as to the date he first noticed the Worship Center roof was leaking. *Compare* GuideOne Mot. Summ. J. [#28-7] Ex. D (Smith Deposition) at 9 (stating Smith first noticed water coming in "maybe end of summer two or three years ago," *with id.* at 10 (agreeing with statement that congregation was "getting wet" from May 2015 to March 2017 when FFC paid to have the roof replaced).

[5] Though Kettle also testified FFC had previously owned an old, red pickup truck exhibiting signs of hail damage, it is unclear when or where this hail damage occurred. Kettle Deposition at 8–9. Smith testified that Whitehead used the truck as his personal vehicle and drove it home every night until roughly 2013, at which point Whitehead purchased his own personal vehicle and started leaving the truck at the church. Smith Deposition at 6. The record does not indicate how far Whitehead lived from the Property.

[6] In the contract signed with Rodgers, Kettle indicated the damage to the Property occurred in May 2015. *Id.* However, this appears to have been a preliminary guess, because neither party currently contends a May 2015 hail storm caused the hail damage at issue here.

4

January 27, 2016. Hoover Declaration. In total, it took roughly five months for FFC to investigate and form a judgment as to when the damage occurred.[7]

After receiving notification of FFC's claim on January 27, 2016, GuideOne retained Scott Morrison, an engineer, and Dan Turpin, a construction and cost-estimation expert, to conduct an investigation into FFC's claim. Hoover Decl. at 3–4. GuideOne's investigation took between three and four months. *Id.* Following its investigation, GuideOne determined the storm occurred in May 2009, rather than May 2012 as determined by FFC's expert. *Id.* Based on this determination of likely date of the storm, GuideOne denied FFC's claim on May 16, 2016. *Id.*

### III. Procedural Posture

On May 19, 2016—three days after denying FFC's claim— GuideOne filed this lawsuit seeking a declaratory judgment that FFC's claim is not covered by either of the two GuideOne policies. Compl. [#1] at 10. FFC subsequently counterclaimed, alleging breach of contract and violations of the Texas Insurance Code. Answer & Counterclaims [#6] at 7. Both parties have now filed motions for summary judgment. FFC Mot. Summ. J. [#27]; GuideOne Mot. Summ. J. [#28]. These pending motions are now ripe for review.

### Analysis

### I. Legal Standards

#### A. Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508

---

[7] The parties dispute the point at which FFC first learned of the hail damage and, correspondingly, the amount of time it took for FFC to report its claim to GuideOne. However, for purposes of GuideOne's motion for summary judgment, the Court must view the evidence in the light most favorable to FFC.

(5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence establishing the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in

6

ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### B. Prompt Notice

#### 1. Reasonableness

An insurer has a right to demand notice as a condition precedent to liability under an insurance policy. *Alaniz v. Sirius Int'l Ins. Corp.*, 626 Fed. App'x 73, 76 (5th Cir. 2015) (per curiam) (citing *Dairyland Cty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157 (Tex. 1973)). Where the policy does not define the phrase "prompt notice," Texas courts construe the policy as requiring notice be given "within a reasonable time" after the occurrence. *Alaniz*, 626 Fed. App'x at 76 (emphasis omitted) (citing *Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005); *cf. Dairyland*, 498 S.W.2d at 157 ("[A] provision . . . requiring that notice of the accident be given [to] the insurer *as soon as practicable* is a condition precedent to liability." (emphasis added)). In this as in most contexts, reasonableness is a factual determination, though it may become a question of law if the facts are undisputed. *See Stonewall Ins. Co. v. Modern Expl., Inc.*, 757 S.W.2d 432, 435 (Tex. App.—Dallas 1988, no writ); *see also Cont'l Sav. Ass'n v. U.S. Fidelity & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir. 1985).

Neither party disputes the insurance policies require "prompt notice" while simultaneously failing to define the term. Therefore, "prompt notice" under the policies means notice "within a reasonable time." *Alaniz*, 626 Fed. App'x at 76. The parties suggest competing reference points for determining whether notice has been given within a reasonable time. GuideOne suggests reasonableness should be determined with reference to the date the damage

7

occurred. In turn, FFC argues reasonableness should run from the date FFC was first put on inquiry notice as to the possibility of hail damage to the Property.

This question appears to be unsettled in Texas. *Compare Ridglea*, 415 F.3d at 477–78 (holding prompt notice period ran from the date on which the damage occurred because insured "*should have been aware* of the likelihood that its roofs had suffered hail damage," given observable hail damage to other parts of the property (emphasis added)), *with Alaniz*, 626 Fed. App'x at 76 (finding it "unnecessary to determine" whether reasonableness analysis should focus on the entire time since the hailstorm or only the period after which the insured's awareness of the facts suggested hail damage might have occurred). However, GuideOne has pointed to two recent cases which have held reasonableness should be determined solely with reference to the date on which the damage occurred. *See Hamilton Props. v. Am. Ins. Co.*, No. 3:12–CV–5046–B, 2014 WL 3055801, at *8 (N.D. Tex. July 7, 2014) (holding "'the date the physical damage is or could have been discovered is irrelevant under the policy'" (quoting *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008))); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, No. 3:16–CV–0465–B, 2017 WL 3115142, at *12 (N.D. Tex. July 21, 2017) (relying on *Don's Bldg. Supply*, 267 S.W.3d at 24).

The reliance of *Hamliton Properties* and *Certain Underwriters* on *Don's Building Supply* is misplaced. *Don's Building Supply* held only that "[t]he date that the physical damage is or could have been discovered is irrelevant" *for the purpose of determining* whether the damage falls within the policy coverage period. *See Don's Bldg. Supply*, 267 S.W.3d at 25–29 (holding insurer "must defend any claim of physical property damage that occurred during the policy term"). Here, however, there is no dispute as to whether the damage occurred during the term of one of the policies. The relevant question is instead whether the Court is precluded from

considering the insured's diligence in discovering damage which is not immediately apparent. *Ridglea* tentatively suggests the answer is "no." *See Ridglea*, 415 F.3d at 477–78 (holding belated notice was not reasonably prompt because insured "should have been aware of the likelihood that its roofs suffered hail damage"). On balance, the Court declines to evaluate reasonableness solely with reference to the date on which the damage occurred and instead opts to consider the diligence and timeliness of the insured in discovering the damage as proper factors in evaluating whether notice was reasonably prompt.

### 2. Prejudice

An insurer may only deny liability for failure to provide prompt notice if the insurer is prejudiced as a result. *Ridglea*, 415 F.3d at 480 (explaining insurance policies are subject to the general contract principle that a party to a contract is excused from performance when the other party commits a material breach depriving the non-breaching party of the benefit reasonably anticipated from full performance). An insurer may demonstrate prejudice by showing one of the recognized purposes of the notice requirement has been impaired. *Alaniz*, 626 Fed. App'x at 78. The primary purpose of a prompt notice provision is "to allow the insurer to investigate the incident close in time to the occurrence, while the evidence is still fresh, and so that it may accurately determine its rights and liabilities under the policy" and "take appropriate remedial action." *Id.*

## II. Application

Viewing the facts in the light most favorable to the nonmovant, the Court finds there are genuine disputes of material fact as to whether FFC gave reasonably prompt notice of the hail damage to the Property.[8]

---

[8] The Court does not reach the parties' arguments regarding whether GuideOne was prejudiced by any delay in notice. The issue of prejudice is relevant only to the extent notice was not prompt. *See Alaniz*, 626 Fed.

First, there is a genuine issue of material fact as to when the hail damage to the Property occurred. FCC's expert has determined the storm damage occurred on May 7 and May 11, 2012. *See* Kettle Affidavit; FFC Mot. Summ. J. [#27-7] Exhibit G (Verisk Climate Hail History Report). GuideOne Mot. Summ. J. [#28-16] Exhibit M (at 5–6). However, GuideOne's expert concluded at least some of hail damage occurred in March 2009. Hoover Declaration at 4. The conflicting determinations of when the damage occurred create a dispute as to a genuine issue of material fact because the date the damage occurred is relevant in determining whether FFC gave reasonably prompt notice.

Second, there is a genuine issue of material fact as to when FFC first learned hail damage might have occurred on the Property. The time frame in which FFC discovered facts putting it on notice as to the possibility of hail damage is relevant in determining whether FFC gave reasonably prompt notice. *See supra* Section I.B.1. It is undisputed FFC maintenance employee Jim Whitehead had notice of both hail damage and leaking as early as several years ago. Furthermore, Whitehead noticed the FFC Worship Center on the Property was experiencing increasingly significant leaking throughout 2014 and 2015. Whitehead Deposition at 26–27. If Whitehead's knowledge can be imputed to FFC, then FFC gave unreasonably late notice as a matter of law.[9] However, this issue is complicated by the insurance policies.

Common Policy Conditions apply to all Coverage Parts within the GuideOne policy. Mutual Policy at 7. At issue is Common Policy Condition H, which states:

> "It is understood and agreed that knowledge of an occurrence by your agent, or any servant or employee of yours, shall not in itself constitute knowledge by you,

---

App'x at 76. Because there is an open question as to whether notice was reasonably prompt, the Court finds it would be premature to address the matter of prejudice at this juncture.

[9] *See, e.g., Camacho v. Allstate Tex. Lloyds*, No. 7:14-CV-581, 2015 WL 12532736, at *2 (S.D. Tex. Sept. 4, 2015) (finding two-year delay in reporting claim unreasonable as a matter of law where insured gave no explanation or excuse for the delay).

10

unless an executive officer of your corporation shall have received such notice from its agent, servant or employee."

Mutual Policy at 8. The parties dispute whether this Policy Condition is applicable here. FFC contends the Policy Condition applies and that Whitehead's knowledge of leaking and hail damage cannot be imputed to FFC. Under this interpretation, FFC first received notice of the possibility of hail damage in August or September 2015, when Whitehead ostensibly raised the issue for the first time with the church's leadership. FFC contends reasonableness should be calculated with reference to this August or September 2015 notice date. However, GuideOne protests it only intended Common Policy Condition H to apply to Coverage Parts which explicitly include a knowledge requirement. See Resp. Mot. Summ. J. [#31] 8–10.

The Court concludes Common Policy Condition H applies and precludes imputing Whitehead's knowledge to FFC. As GuideOne correctly notes, this Court "must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Don's Bldg. Supply*, 267 S.W.3d at 23. Common Policy Condition H does not state that it only applies to the term "knowledge" as used within the policy. Other provisions in the policies indicate GuideOne knew how to include such limitations but chose not to do so with respect to Common Policy Condition H. *See, e.g.*, Mutual Policy at 29, 38, 59, 66, 78 (defining terms "as used in" various parts of the policy). Moreover, even assuming ambiguity existed as to the proper ambit of Common Policy Condition H, Texas canons of statutory interpretation would require this Court to resolve such ambiguity in favor of FFC. *See Don's Bldg. Supply*, 267 S.W.3d at 23 (requiring courts to resolve ambiguities in insurance contracts in favor of coverage where contract is susceptible to more than one reasonable interpretation).

Because Whitehead's knowledge of facts indicating hail damage is irrelevant under the policies, the proper inquiry is when FFC leadership became aware of facts which should have put

11

them on notice to investigate the extent of any damage. Brent Kettle, the Vice-Chair of the Board of Elders for FFC, states FFC leadership was unaware of any hail damage to the Property until Whitehead informed them the Worship Center roof was leaking. Kettle Affidavit. Donnie Smith, the Pastor at FFC, similarly testified he first noticed leaking in the Worship Center "maybe end of summer two or three years ago." Smith Deposition at 9. Although Smith gave contradictory testimony on this point, *see id.* at 10, these statements create a genuine dispute of material fact as to the date FFC leadership first had notice of facts indicating the Property may have suffered hail damage.

Third, assuming the FFC leadership first had notice of hail damage in August or September 2015, there still remains a genuine issue of material fact as to whether FFC reported the claim to GuideOne within a reasonable period of time. In August or September 2015, FFC recruited a parishioner who worked in roofing to investigate the cause of the leaking. Kettle Affidavit. The parishioner informed FFC of hail damage to the roof, and FFC then hired a public adjuster (Rodgers) and an engineer (Phelps) to help determine the date on which the storm damage occurred and to assist FFC in making an insurance claim. *Id.* Phelps and Rodgers concluded the damage occurred in May 2013, while the Property was covered by the Mutual Policy. *Id.* Rodgers then reported the claim to GuideOne on January 27, 2016, five months after learning hail may have damaged the Property. Hoover Decl. at 3. If FFC had not investigated in this manner, FFC would have had to either guess which of its three policies applied—potentially imposing investigative costs on the wrong insurer—or, alternatively, report its claim redundantly under all three potentially applicable policies.

GuideOne argues a five-month investigation is unreasonable as a matter of law. However, GuideOne took three to four months to conduct its own, subsequent investigation, *see id.* at 3–4,

suggesting the length of FFC's investigation was not wholly unreasonable. Moreover, this Court is unaware of any case holding a five-month delay—during which time the insured diligently investigates its claim—is unreasonable as a matter of law. *Cf. Alaniz*, 626 Fed. App'x at 77 (holding insured delayed unreasonably as a matter of law by failing to investigate damage or take action until months after learning of hail damage). In this context, the Court holds there is a genuine dispute of material fact as to whether FFC reported its claim in reasonably prompt fashion.

In sum, the Court finds a panoply of factual disputes preclude summary judgment at this juncture.[10] Accordingly, the parties' motions for summary judgment are DENIED.

### Conclusion

Accordingly,

IT IS ORDERED FFC's Motion for Partial Summary Judgment [#27] is DENIED; and

IT IS FURTHER ORDERED GuideOne's Motion for Summary Judgment [#28] is DENIED.

SIGNED this the 3rd day of January 2018.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[10] In a footnote in its motion for summary judgment and subsequently, in a single paragraph of its reply, GuideOne suggests summary judgment is also appropriate because FFC has submitted no evidence which might allow a factfinder to segregate covered losses from non-covered losses. GuideOne Mot. Summ. J. [#28] at 18 n.6; Reply GuideOne Mot. Summ. J. [#33] at 15–16; *see also Nat. Union Fire Ins. Co. of Pittsburgh v. Puget Plastics Corp.*, 649 F. Supp. 2d 613, 650 (S.D. Tex. 2009) ("The insured is not required to establish the amount of its damages with mathematical precision, but there must be some reasonable basis upon which the jury's finding rests."). The Court finds the conflicting expert testimony presented by the parties as to the hail damage presents a genuine issue of material fact as to which storm damaged the Property, precluding precise calculation of damages at this juncture. However, to the extent the jury determines GuideOne is liable under the Policy, the Court finds the parties have submitted sufficient evidence and deposition testimony to suggest damages may be segregated at trial.